Good morning, Your Honor. May it please the Court. I'm John Ward on behalf of Mr. Samuels. As I'm sure the Court is aware, the issue in this case is this letter by one of the co-defendants confessing his culpability to the offense for which Mr. Samuels was convicted and exculpating Mr. Samuels. And the issue is, the issue that concerned the jury about which the jury asked the question was, well, can we be sure that Martin, who was the fellow that wrote the letter, actually wrote it? How do we know that? Well, because they asked a question wanting to see... What was the question? The question was may we see all of the, there's an inference involved in that, Your Honor, but... Isn't that critical? Pardon me? What was it asking to see, just the envelopes? No, the envelopes and the letters, the exhibits were attached together. Okay, and the case was argued by all parties to the jury that it was, in fact, written by Mr. Martin. That was the assumption, correct? Yeah, but it wasn't stipulated. No, it wasn't stipulated, but it was not contested. So what we're, I'm just trying to understand, having read the closing argument and understanding that the jury came out with just simply a request to review the other documents, absent looking at the affidavits, which the magistrate judge did not take into account. All we have is that the jury, for whatever reason, was interested in seeing the other letters. So why does that go to, what should we infer that goes to? Well, of course, my argument is based on the, the argument is that the only supportable inference is that, for whatever reason, the jury was concerned about whether or not this fellow actually wrote them, and that's why they wanted to see the supporting documents, because as you're aware, the exhibits that weren't admitted had returned addresses on them. No, I understand that, that they, that clearly that if someone was contesting that he actually wrote it or explained the absence of a signature on that particular letter, the confession letter that they did have, but that's all speculation, isn't it? Well, I don't think so, because I, I mean, I really can't come up with any other reason why they, why in the world they would have wanted that.  I had a jury once who used my exhibit to calculate damages on the most irrational basis I could imagine. Juries do really strange things. Juries do strange things, but I know they certainly do, which is why I practice appellate law. But, you know, we can't look at these, although I argue in my brief that we can look at these declarations or this report from the investigator, but, I mean, thinking about it, I thought, well, you know, it's sort of a situation, I think, like when you ask the police officer, well, the defendant wasn't there, was he? And the officer says, well, I don't recall seeing him there. You know, I think it's in that margin that they were working. That's, and my argument is that that is really the inference. That's. Okay, so where is the error in the case, then? What stage does this error emerge? I think the judge was required in the interest of fundamental fairness to do one of two things, to either let them see the exhibit they wanted to see or to tell them that there was a stipulation. So it really comes down to what the judge did or didn't do and what counsel did or didn't do once the jury flagged its interest in the other letters. I think so. I don't think, I think this would be a very different case if there hadn't, if there had not been a jury question. So that's, I'd like to reserve a minute or two for rebuttal. Well, you've got lots of minutes. And if you'd like to reserve six minutes and ten seconds, you've got them. Thank you, Your Honor. Good morning, Your Honor. It's David Andrew Eldridge, Deputy Attorney General for Respondent of Pelley. Actually, I think the most logical inference is that the jurors, the parties that have, as Magistrate pointed out, it seems, although he didn't have the letters, it seems that there was nothing actually useful. Well, why would the jury ask to see what plausible explanation for the jury request is there other than that they were concerned about the authenticity of the actual authorship of the letter? Because the letter that they had in front of them had something to do with the case they were deciding. And they probably wondered if the other letters did, too. They have no way of knowing that the letters are probably useful or useless on that point. The magistrate points out that in light of the testimony taken at trial, there probably wasn't anything in there bearing on whether Martin actually did it alone or in conjunction with the others. But the jurors would have no way really of knowing that. So they probably thought, in this letter he says, I did it and you didn't. And they were probably wondering, did he say something like that in the remaining letters? And they don't know that. Well, the reason those letters weren't introduced in the first place is because they don't say that. And the jurors aren't going to be informed that that's why the letters aren't in there. They're just told, no, they're not coming in. Mr. Eldridge, were the letters referenced during the trial testimony in some other way that provides a context for the jury's question? Was a reference to these letters in the trial testimony or in arguments of counsel that might provide some context for why the jury wanted to see them? It is my belief that they were referenced by Mrs. Samuels. And the contents were not gone into much, but there's nothing to indicate that it did refer to. More than that, she looked at them while she testified, but they were never admitted into evidence. Isn't that right? I'm going to go with you on that one. Well, the other side can correct me if I'm wrong, but my impression is that she had them on the stand and looked at them, and they were never shown to the jury and they were never admitted into evidence. Well, that's something which would certainly stimulate the curiosity of the jurors. And while we might be able to look at them if they were here, but the jurors have a question before them and it's logical for them to at least suspect, hey, maybe the other letters will have more incriminating statements. Now, the one letter they did have was unsigned. Yes. And no one had said to them, we stipulate that this was actually written by Mr. Martin. That's correct. No one said the word stipulate. But the jurors, I doubt, would have taken any meaning from the word stipulate. What they had was an unanimous agreement that they wrote the letters, even though no one formally stated that they agreed. How do you know that they knew that there was an unanimous agreement? All they know is that the people were silent on the question. Well, no. Actually, Martin's lawyer himself says, yes, he wrote it, but it's a lie.  Did he say that to the jury? I believe that was his argument, that, in fact, it was a lie. And when the defendant's sitting before you, actually, his lawyer gets up and says, yes, he wrote the letter, but it's a lie. I think certainly a court would be likely to reach the conclusion that, well, it's an undisputed issue, and so would defense counsel. I think any defense counsel could logically conclude that when all of us are sitting up here agreeing that he wrote the letter, well, then a further instruction to the jury would be utterly useless because no rational jury is going to conclude anything else. Well, counsel, if you rely upon the arguments of counsel, isn't there a problem with the fact that the trial court instructed the jury that arguments of counsel are not evidence, they're not to be considered as such? I mean, so it's really arguments of counsel doesn't get you very far, does it, in terms of their arguments and suggestions that, in fact, the authenticity was not an issue? The jurors could not rely on it as evidence that is correct. However, when all four attorneys are in agreement on the point and there's no evidence to the contrary, it certainly isn't. But was the agreement communicated to the jury? Oh, I don't think it was beyond the fact of the arguments. However, we are talking here not about what might have been useful had it been requested, and if the trial court, under pain of being condemned as acting fundamentally unfair to the defendant, must have on its own come up with this instruction and give it to the jury. Well, the judge himself at the outset of trial was sufficiently concerned to conduct a hearing on authenticity, so isn't it reasonable to assume that the judge, when confronted with a jury question and asking to see the other letters, whether or not the only reason was authenticity, certainly that was a logical question that the jury might have, since he'd had the same one. So why wouldn't it have been a duty, as a matter of fundamental fairness, to make sure that the defendant was getting full advantage of his proper defense? It's probably better to answer the question when I'm finished than the question for me right now. Why wouldn't it have been incumbent upon the judge to clarify with the jury what the status of the letters was or what they were properly allowed or not allowed to do with them, so that they wouldn't be doing any kind of speculation? Well, first off, the United States Supreme Court has never stated that the trial court has a sui sponte duty to do any sort of thing like that. Once a defendant is given counsel who's competent, that's really the end of it. If somehow counsel thinks that if you have a competent attorney who's fine with the way the instructions are, as he was, then it's not up to the court to sort of stand up and fill in the gap. That is what counsel's duty is. When the jury comes back, the judge has assumed he doesn't know. No, he doesn't. He does not. That is exactly part of the problem. Counsel was there. Counsel saw everything that went on just as he saw before the jury came back. And if counsel didn't have a problem with it and counsel is competent, and he is because counsel's got no reason to assume that the reason the jurors are asking him is because they have a problem with authenticity, it is much more likely that they were sitting there seeing that there were other letters which a witness was looking at and that they didn't get to see. And while jurors are constrained to rely on only what's relevant, that doesn't stop them from being curious. And I can't imagine a juror wouldn't want to see the remainder of the letters. What do we know, if anything, about the competency of Mr. Samuel's lawyer? You're saying he's competent. Well, he's presumed to be. There's an argument of ineffective assistance of counsel in this case. Well, there's an assertion that he wasn't. The presumption is that he was. And one can easily imagine – I'm sorry. No, keep going. One can easily imagine a good reason for him not to think that authenticity was at issue. I mean, everyone – Do we know anything – I think I know the answer to this question. Do we know anything as to what that lawyer's – what Mr. Samuel's lawyer said when the jury asked to see the letters? I found nothing. I think the record in front of us is silent on that question. Is that right? My knowledge is equally correct. And if we're trying to figure out ineffective assistance of counsel and the argument is, did he or did he not urge the judge to allow those letters to go into the jury, we need an evidentiary hearing on that point? Well, no, because if he hasn't presented that argument so far to the state court, if there's no record in which he attempted to present that to the state court, then the state court would have been entitled to reject the claim simply for lack of proof. So at this point, what you're deciding now is whether the state court properly ruled on what it had before it, not whether if the court had on its own taken more evidence, it might have reached a different conclusion. No. Are you arguing that the ineffective assistance of counsel argument has not been exhausted? I'm not sure I understand where your argument is coming from. Well, I'm saying that a claim in determining whether it's exhausted is dependent on the evidence before the court. It's not enough to – so if you need to get more evidence that you find material, then no. You start ending up with a different claim. Either the state court had all the material evidence before that to resolve the claim or it didn't. Well, but this is a procedural question, and it very often is the case that if the claim is exhausted in state court, nonetheless the federal district court can take evidence to elaborate further on that claim. Elaborate is the word, though. You can't take evidence that will materially alter the nature of the claim. If you are finding that this is critical to the claim, then it's material, and you can't take that in federal court for the first time. If the state court doesn't have the material evidence in front of it – Are you arguing that the IAC claim is not exhausted? Is that what you're telling me? Actually, I'm saying that the claim that you are coming up with here is not the claim he came up with because your claim is based on additional evidence which is not before you. But he's claiming ineffective assistance of counsel, isn't he? Yes, but the mere assertion of ineffective assistance of counsel is dependent upon the evidence presented in light of it. So if you don't have the evidence – merely the legal assertion that I was denied effective assistance of counsel does not put before any court all the myriad ways there could have been ineffective assistance. It's based on a claim that this is what happened, here's the evidence to prove it, and I claim that that deprived me of the effective assistance of counsel. It's an entirely different claim if you say something else happened, that prejudiced me, and I was denied the effective assistance of counsel. Those are two separate IAC claims. Are you familiar with the United States Supreme Court case of Bollenbeck v. United States on the role of a trial judge in clarifying instructions to the jury? I believe it says something when they state their – when they make explicit their problem, you're supposed to clarify it crystally or something like that. They don't – they didn't make explicit here what their problem was. They wanted to see the letters, which could easily – The judge sort of sits there, and if the jury isn't smart enough to frame the question explicitly, then the judge has no obligation to step in and make sure the jury understands what it's supposed to do. I guess my quick answer would be they have also said in Henderson v. Kibb that it is up to the parties to present the judge with the proper instructions, and you can't get around that. You can't get around Strickland by saying, well, then make it a suicide duty of the judge. Thank you. Okay. Thank you very much. Mr. Ward, you've saved six minutes. I won't take them all. I don't think I need them. No, you have them all. The only point that I wanted to make is that there was no request for a stipulation or for an instruction at that point. I mean, the record – Well, the record's just not clear. We don't have a record of what occurred after the note came out. No. So – but we don't have a record of the trial lawyer saying, would you please make the stipulation. I mean, to the extent that – We maybe could find it out on remand if we had an evidence to hear. Yes, exactly. That would be easy enough to do. Yeah. And I think other than that, unless the Court has additional questions. Well, let me ask a follow-up to that. Again, I'm not intimately familiar with California procedures, but was there some form of post-conviction relief sought in this matter in which an ineffective assistance claim could be fully developed, or was it just a direct appeal? Oh, excuse me. No, that's fine. Mr. Samuels, up until we reached this Court, has been pro se after his conviction, and he filed an exhaustion petition in the California Supreme Court alleging ineffective assistance of counsel and specifically raising the point that it was – if there were – my position is that this really is pretty much controlled by Bolenbach in the sense that there was a situation and it was the judge's duty to act. However, had there been a duty on the part of counsel to request it, the exhaustion petition made precisely that point, that he should have and he didn't. So somebody – I mean, it's sort of somebody should have done something. Because the jury was clearly wanting to – I mean, you know, it's not so outrageous to give the jury what they need. That would be the – can I just ask this question? Sure. Because I don't think we've addressed it. Let's assume that there was error. Where's the prejudice? In other words, in light of all the other evidence here that goes to – I guess the prejudice comes from the fact that these were three roommates. And, I mean, if Martin's confession were true, it would have been easy for him to put the stuff all over the apartment. They all live together. Well, right. But this is a receiving stolen property conviction.  Not participant in the burden. No. True enough. But, I mean, if somebody goes into my room and puts their stash there, I mean, they don't receive it. You know, it was just put there. So, I mean, I think because the prejudice comes from the fact that they were roommates and we really don't know who did it. Maybe Martin did it all by himself. All of the stuff scattered around the apartment, including in particular boots. I understand that it might not be the most intelligent way for a criminal to proceed. But it's certainly not – I think it passes the substantial and injurious test. And you contend that it's the Brecht test that governs the harmlessness determination. Well, I hope I haven't conceded. I think you're right. The reason I'm asking the question is, HEDPT is a little ambiguous on this point, it seems to me. It's not at all ambiguous in terms of the deference we're required to give to the state court as to the determination as to whether there has been error. That is to say, it's been error only if the state court is unreasonable in application of its Supreme Court precedent. Right. It's not entirely clear to me what deference we owe to a harmlessness determination. Here, because the state court did not find error, it, of course, did not reach harmlessness. Right. So what I'm inclined to do is to think because the state court didn't reach it, we simply reach independently the harmlessness determination if we decide that there's been a violation of right. I certainly like that approach, Your Honor. You like that? Yes. No, I mean, it actually – it's a defensible – more than defensible approach because they didn't consider it. I mean, they didn't consider it. They just didn't address the issue because they found no error. No, because they found no error. So somebody's got to, I think. I mean, in other words, this is really one of those situations where, for whatever reason, this is Mr. Samuel's shot. Okay. Thank you. Thank you very much. The case of Samuels v. Newland is now submitted for decision. The next case on the argument calendar is Ray v. Lewis.
judges: W. Fletcher, Fisher, Winmill